UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LINDA DRAKE, | ) | Case No.  1:12CV428 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | MEMORANDUM OPINION & ORDER |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. Plaintiff asserts, *inter alia*, that the Administrative Law Judge ("ALJ") erred in his decision by failing to find that her history of breast cancer, status post bilateral mastectomy, with additional tissue excision, and her neuropathy, lymphedema and back and hip impairments, were severe impairments at Step Two of the sequential evaluation for evaluating entitlement to social security disability benefits. For the following reasons, the Court finds that the ALJ erred in his Step Two decision and therefore REMANDS this case.

**I.      PROCEDURAL HISTORY**

Plaintiff filed an application for DIB in February 2009, alleging disability beginning September 19, 2008 due to malignant neoplasm of the breast and surgeries resulting therefrom,

1

including a complete mastectomy, a lymph node dissection, a second surgery because a clear margin was not attained under the left breast, and breast reconstruction. ECF Dkt. #12 at 186-209.[1] Plaintiff also alleged the conditions of lymphedema and coronary artery disease. *Id*. The Social Security Administration ("SSA") denied Plaintiff's applications initially and upon reconsideration. *Id*. at 164-172. Plaintiff requested a hearing before an ALJ which was held on January 4, 2010. *Id*. at 172-140. Plaintiff testified at the hearing and was represented by counsel. *Id.* at 119-142. A vocational expert ("VE") also testified. *Id.* at 139-141.

On January 7, 2010, the ALJ issued a decision finding that Plaintiff had no severe impairments and he therefore denied her social security benefits. ECF Dkt. #12 at 148-156. Plaintiff appealed this determination to the Appeals Council, and on July 27, 2010, the Appeals Council granted her request for review, vacated the ALJ's decision, and remanded the case to an ALJ to resolve the following issue:

> The Appeals Council has determined that the claimant's history of breast cancer, status post bilateral mastectomy and reconstruction, and coronary artery disease constitute severe impairments as defined in SSRs 85-28 and 96-3p. Following various treatments, including reconstructive breast surgery, the medical evidence suggests that the claimant may have suffered exertional restrictions limiting the claimant to lifting no more than 10 pounds (exhibits 11F page 2,l 13F page 1). Therefore, it is necessary to proceed in the sequential evaluation process and make findings consistent with 20 CFR 404.1520.

*Id.* at 162. The Appeals Council ordered that the ALJ obtain additional evidence of Plaintiff's history of breast cancer and resulting surgeries and her coronary artery disease to complete the administrative record, which may include consultative examinations and medical source statements concerning the nature and severity of Plaintiff's impairments, and any resulting functional limitations and their date

---

[1] Page references are to Page ID Numbers in the transcript of proceedings.

of onset. *Id*. The Appeals Council further ordered the ALJ to further consider Plaintiff's maximum residual functional capacity ("RFC") and provide the proper rationale and support for his or her RFC finding. *Id.* Finally, the Appeals Council ordered the ALJ to obtain supplemental evidence from a VE if the additional evidence obtained warranted further testimony to clarify the effect of the RFC on the claimant's occupational base. *Id*. at 163.

On April 18, 2011, the same ALJ held another hearing with Plaintiff present and represented by counsel and with a VE present as well. ECF Dkt. #12 at 83, 86. Plaintiff and the VE testified. *Id*.

On May 26, 2011, the ALJ again found that while Plaintiff had the medically determinable impairments of a history of breast cancer, status post bilateral mastectomy and reconstruction with augmentation by breast implants and coronary artery disease status post stenting, these impairments were not severe impairments. ECF Dkt. #12 at 62. The ALJ did not find that Plaintiff had a medically determinable impairment of back or hip pain. *Id*. at 63-64. The ALJ concluded that "[t]he claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq*.)."

The ALJ noted that Plaintiff had alleged severe impairments based upon breast cancer, metastatic carcinoma, treatment for that condition with multiple surgeries, including a bilateral mastectomy, left axillary dissection and reconstruction, chemotherapy, radiation therapy, and the effects of that treatment, which included lymphedema of the left upper extremity, neuropathy affecting the hands and feet, and recurring infections. *Id.* at 65. However, he found that "[t]he entire period of active treatment for cancer from the original diagnosis until the completion of all surgeries, chemotherapy and radiation treatments was September 2008 to July 14, 2009." *Id*. at 67. He also

noted that Plaintiff suffered a heart attack in November 2009 which resulted in cardiac catherization and hospitalization and she was diagnosed with coronary artery disease. *Id*. at 66. The ALJ found that "[a]s of July 14, 2009, or August 14 or 21, 2009 at the latest, the undersigned finds that the claimant's surgeries, chemotherapy and radiation treatment and the side effects of treatment had resolved to the extent that they caused no more than minimal functional limitations in her ability to perform basic work activities and that this improvement and resolution was persistent and ongoing when she was seen by Dr. Jain on September 21, 2009." *Id*. at 70.

Plaintiff again appealed the ALJ's decision to the Appeals Council, but the Appeals Council denied her request for review. ECF Dkt. #12 at 56-67. The Appeals Council did accept additional medical records submitted by Plaintiff, which included a December 7, 2011 PET/CT scan which showed extensive active neoplasm involving the sternum, metastatic disease in two areas in Plaintiff's liver, and bony metastases in the T7 vertebral body, the pelvis and the tenth rib. *Id*. at 492. Also accepted by the Appeals Council were the November 14, 2011 through December 2011 treatment records of Dr. Grassie, who treated Plaintiff for malignant neoplasm of the breast after Plaintiff discovered a palpable lesion on her left chest wall two to three weeks prior to November 14, 2011. *Id*. at 493-494. A November 21, 2011 treatment note showed that Dr. Grassie performed a biopsy which showed recurrent adenocarcinoma. *Id*. at 496. Dr. Grassie excised the adenocarcinoma on November 23, 2011. *Id*. at 500.

On January 18, 2013, counsel for Plaintiff filed with the Court a notice of suggestion of the death of Plaintiff. ECF Dkt. #18. The death certificate was attached which showed that on December 26, 2012, Plaintiff had died. ECF Dkt #18-1. The immediate cause of death was listed as metastatic breast cancer. *Id.*

**II.     STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to DIB and SSI.  These steps are:

1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (§§20 C.F.R. 404.1520(b) and 416.920(b) (1992));

2.  An individual who does not have a "severe impairment" will not be found to be "disabled" (§§20 C.F.R. 404.1520(c) and 416.920(c) (1992));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see §§20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (§§20 C.F.R. 404.1520(d) and 416.920(d) (1992));

4.  If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (§§20 C.F.R. 404.1520(e) and 416.920(e) (1992));

5.  If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (§§20 C.F.R. 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).   The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering her age, education, past work experience and RFC.  *See Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

**III.     STANDARD OF REVIEW**

This Court's review of the ALJ's decision is limited in scope by § 205 of the Social Security Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Therefore, this Court is limited to

-5-

determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

**IV. ANALYSIS**

**A. FAILURE TO FOLLOW REMAND ORDER**

In its July 27, 2010 remand order, the Appeals Council specifically found that Plaintiff's "history of breast cancer, status post bilateral mastectomy and reconstruction, and coronary artery disease constitute severe impairments." ECF Dkt. #12 at 162. The Appeals Council found that the medical evidence suggested that Plaintiff suffered exertional restrictions due to her severe impairments and it concluded that "it is necessary to proceed in the sequential evaluation process." *Id.* But the ALJ did not proceed beyond Step Two in this case, and ended the analysis at the same step in which he ended his prior decision in Plaintiff's case that resulted in the Appeals Council's remand order.

Accordingly, the Court questions whether the ALJ complied with the Appeals Council's remand order. Federal courts disagree on whether an ALJ's failure to follow an Appeals Council's remand order constitutes an independent ground for reversal in federal court. *See Long v. Comm'r of Soc. Sec.*, No. 2012 WL 2156713, at *8 (S.D. Ohio, June 13, 2012)(citations omitted), report and

recommendation adopted by 2012 WL 4009597 (S.D. Ohio, Sept. 12, 2012)(court undertook review on whether the ALJ complied with the Appeals Council's mandatory directives upon remand and found that he had complied); *Salvati v. Astrue*, 2010 WL 546490, at *5 (E.D. Tenn., Feb. 10, 2010), unpublished, citing *Warren-Ward v. Comm'r of Soc. Sec.*, No. 1:07cv811-TFM, 2008 WL 2397390, at *3 (M.D. Ala. June 10, 2008), citing 20 C.F.R. §404.983("[w]hen an ALJ does not comply with a remand order, his decision must be reversed and the case must be remanded to the Commissioner."), *but see Riddle v. Astrue*, No. 2:06-00004, 2009 WL 804056 (M.D. Tenn. March 25, 2009)(whether an ALJ complied with an Appeals Council's order of remand is an internal agency-level proceeding not within the district court's scope of review for social security cases which is limited to determining if substantial evidence supports the Commissioner's findings of facts and whether the correct legal standards were applied.). The Court also notes that in this case, the Appeals Council did deny Plaintiff's request for review after the ALJ issued his second decision that was based upon the Appeals Council's remand order. ECF Dkt. #12 at 50.

### B. **STEP TWO DETERMINATION**

While it is debatable whether the ALJ complied with the Appeals Council's remand order, and whether this Court can consider such an issue, it is clear to the Court that substantial evidence is lacking for the ALJ's Step Two determination. The Court finds problems with the ALJ's determination that Plaintiff's cancer-related impairments did not meet the Step Two de minimus hurdle.

At Step Two, the ALJ determines whether a claimant's impairments are severe and whether they meet the twelve-month durational requirement. 20 C.F.R. § 404.1520(a). At this Step, the claimant bears the burden of proving the threshold requirement of a "severe impairment." *Higgs v.*

*Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). The claimant must also show that she suffered from a medically severe impairment or impairments that lasted or could be expected to last for a continuous period of at least twelve months. *Id.* The Court must apply a de minimis standard in determining severity at Step Two. *Id.* at 862. An impairment or combination of impairments is not severe "...if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). The types of "basic work activities" that qualify for use in the regulations are described in 20 C.F.R. §404.1521(b). An impairment can be found non-severe only if it could constitute "a slight abnormality which has such a minimal effect on the individual that it could not be expected to interfere with an individual's ability to work, irrespective of age, education and past work experience." *Farris v. Sec'y of Health and Human Servs.*, 773 F.2d 85, 89-90 (6th Cir. 1985). The goal of Step Two is to screen out totally groundless claims. *Id.* at 89.

The ALJ in this case found that Plaintiff "does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 404.4521 *et seq*.)." ECF Dkt. #12 at 64. In making this finding, the ALJ reviewed the medical evidence related to Plaintiff's impairments and concluded that "the claimant's surgeries, chemotherapy and radiation treatment and the side effects have not caused more than minimal functional limitation in her ability to perform basic work activities for any continuous period of at least twelve months at any time since she was discharged from active treatment for cancer in July-August 2009." *Id*. at 64-76. He further summarized that "while the claimant has experienced some periods of impairment while undergoing treatment for breast cancer and coronary artery disease that have been sufficiently severe to preclude work, the undersigned finds

no impairment or combination of impairments has significantly limited her ability to perform basic work activities for any continuous period of at least twelve months from the alleged date of onset to the present and the durational requirement for severe impairment has not been met in this case." *Id*. at 78.

In his Step Two analysis, the ALJ failed to find that Plaintiff had any severe impairments. ECF Dkt. #12 at 64. He combined the severity requirement of Step Two with the durational requirement. The first two steps of the five-step test for determining disability "involve threshold determinations that the claimant is not presently working and has an impairment which is of the required duration and which significantly limits his ability to work." *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 889, 107 L.Ed.2d 967 (1990). 20 C.F.R. § 404.1520(a)(4)(ii) provides in relevant part that the second step of the five-step evaluation involves consideration of "the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled." 20 C.F.R. § 404.1520(a)(4)(ii). The duration requirement regulation states that "[u]nless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. It does not appear that the ALJ made a separate severity finding in this case.

Even putting aside the ALJ's lack of separation between the severity requirement of Step Two and the durational requirement, the ALJ also failed to obtain additional evidence as to the onset date regarding Plaintiff's breast cancer and resulting treatments and impairments as ordered by the Appeals Council. The ALJ cited to September 19, 2008, the disability date set forth by Plaintiff in her application, and repeatedly referred to and used the general date of "September 2008" as Plaintiff's

date of diagnosis to establish the running of the twelve month period for Step Two durational requirment purposes. He found that "[t]he claimant testified that she identified a palpable mass in her left breast in September 2008." *Id*. at 67. The ALJ cited to the April 18, 2011 hearing testimony as support, but the Court cannot find such testimony supporting Plaintiff's discovery of the mass. There is also no testimony as to whether Plaintiff had any symptoms relating to the breast cancer prior to her date of diagnosis. Under 20 C.F.R. Part 404, Subpart P, Appendix 1 § 13.00J, a disabling impairment can exist prior to the date of diagnosis based upon the type of malignancy and its location, as well as the claimant's symptoms. *Brown v. Astrue*, No. 1:11-cv-01000-MJD-JMS, 2012 WL 2376069, at *5 (S.D. Ind. June 22, 2012), citing *Duncan v. Astrue*, No. C08-0065 CRD, 2008 WL 4083170 at *3 (W.D. Wash. Aug. 28, 2008), unpublished. No such analysis was done in this case. A progress note from Dr. Hefner indicates that on August 22, 2008, Plaintiff presented to him complaining of a palpable mass that she had found in her left breast about two to three weeks prior to presentation. ECF Dkt. #12 at 560.

Nevertheless, the ALJ cited the general date of September 2008 and concluded that "[t]he entire period of active treatment for cancer from the original diagnosis until the completion of all surgeries, chemotherapy and radiation treatments was September 2008 to July 14, 2009." ECF Dkt. 12 at 67. Further on in his decision, the ALJ additionally found that "[a]s of July 14, 2009, or August 14 or 21, 2009 at the latest," Plaintiff's "surgeries, chemotherapy and radiation treatment and the side effects of treatment had resolved to the extent that they caused no more than minimal functional limitations in her ability to perform basic work activities and that this improvement and resolution was persistent and ongoing when she was seen by Dr. Jain on September 21, 2009." *Id*. at 70. The Court notes that on July 14, 2009, the first date used as the date of resolution for durational requirement

-10-

purposes, Plaintiff was still undergoing radiation treatment. *Id.* at 329. And while the three other dates alternatively used by the ALJ, August 14, 2009, August 21, 2009 and September 21, 2009 indicated positive results from the radiation and physical therapy, lymphedema remained a problem as of August 21, 2009. *Id.* at 435 (noting "[d]ecreased sensation in triceps region consistent with Dx" of lymphedema). Moreover, the fact that the ALJ used four different end dates to determine the durational requirement presents confusion in and of itself. The use of these four dates, coupled with the ALJ's use of a general onset date without additional inquiry into that date as ordered by the Appeals Council and the fact that the beginning and end dates of the durational requirement are very close depending upon the date that was used in this case, lead the Court to order a remand of this case.

Finally, the Court also notes that the ALJ failed to consider whether the other impairments that Plaintiff suffered only two to three months after her cancer treatment ended resulted from either the cancer itself or the modalities chosen to treat the cancer, which included six rounds of chemotherapy that she had to terminate early due to neutropenic fever, 35 doses of radiation therapy, and physical therapy. *Id.* at 98, 321-330. While Plaintiff's radiation treatment had ended and it appeared that she had recovered from its side effects, the ALJ nevertheless noted that she was still receiving physical therapy after the radiation for lymphedema and the physical therapy discharge note dated August 21, 2009 nevertheless still found "decreased sensation in the triceps region consistent" with the diagnosis of lymphedema. ECF Dkt. #12 at 69. Plaintiff testified at the hearing before the ALJ that she still participated in physical therapy for her lymphedema. *Id.* at 100. Plaintiff also suffered a heart attack shortly after her radiation therapy had ended. *Id.* at 102, 344-345. A note from Dr. Rebecca McFarland dated November 23, 2009 suggested that Plaintiff's chest discomfort which was eventually diagnosed as coronary artery disease could have developed due to pericardial effusions from Plaintiff's

status-post radiation and chemotherapy. *Id*. at 341-342.

Since the issue of whether Plaintiff met the twelve-month durational requirement is so close in this case and the ALJ used general and numerous dates for Plaintiff's onset date of disability and the end date of the durational requirement which confused this issue, the Court REMANDS this case. The durational requirement issue, coupled with the ALJ's failure to follow the Appeals Council's remand order which in particular ordered him to obtain additional evidence regarding Plaintiff's onset date, and the lack of substantial evidence to support whether Plaintiff's impairments were severe and met the twelve-month durational requirement, also supports the Court's remand order.

Upon remand, if the ALJ shall again choose to stop the analysis at Step Two, the ALJ shall provide further evaluation and analysis concerning both the severity and the durational requirement, particularly concentrating on evidence regarding Plaintiff's onset date, whether Plaintiff's impairments, including lymphedema, met the durational requirement, and whether Plaintiff's cancer and/or treatment modalities caused other impairments that may have met the durational requirement.

## V.    CONCLUSION AND RECOMMENDATION

For the above reasons, the Court REVERSES the decision of the Commissioner and REMANDS the instant case to the ALJ for further factfinding and analysis.

Dated: April 9, 2013                        */s/ George J. Limbert*
                                                             GEORGE J. LIMBERT
                                                            UNITED STATES MAGISTRATE JUDGE